BEECHER *v.* FERRIS.

1. ADVERSE POSSESSION — EJECTMENT — LOCUS IN QUO—INSTRUCTIONS.

   In ejectment by the owner of lot 5 against the owner of the adjoining lot 6 to recover a strip of land described in the declaration as a part of lot 5, the court stated in his charge that the action was brought to recover a part of lot 6. The truth of such statement was not determinable from the proofs. The only issue, however, was whether plaintiff had acquired title to the strip by adverse possession, and the *locus in quo* was made clear to the jury. *Held,* that plaintiff was not injured by the instruction.

2. SAME—REQUISITES TO TITLE.

   The mere inclosure of land by a fence, followed by a claim of ownership for the statutory period, will not constitute adverse possession, which involves uninterrupted occupancy as well as claim of title.

3. SAME—BURDEN OF PROOF.

   In ejectment, where proof of occupancy is the only evidence of title in either party, it is not incumbent upon defendant to show that his occupancy of the land has been exclusive for the statutory period, but the burden is on the plaintiff to show title in himself.

4. SAME—INSTRUCTIONS UNSUPPORTED BY EVIDENCE.

   Where plaintiff in ejectment claimed title by adverse possession to a strip of land which defendant had used for a foot-path, it was reversible error to give an instruction, unsupported by the evidence, to the effect that defendant had paid the taxes on the land for a specified year, since such fact, if true, would tend to show that the user of the strip by defendant was accompanied by a claim of title, and was therefore not in subordination to, or acquiescence in, plaintiff's claim.

Error to Wayne; Lillibridge, J. Submitted April 20, 1898. Decided May 17, 1898.

Ejectment by George L. Beecher against Alfred Ferris, impleaded with Osman B. Canney. From a judgment for defendants, plaintiff brings error. Reversed.

*Henry M. Cheever*, for appellant.

*John Galloway* and *H. M. Dubois*, for appellees.

HOOKER, J.   The plaintiff's premises adjoin those of
the defendant upon the east.   A fence which the defend-
ant had built some years before was taken up and moved
by him two feet to the east of its previous location.
Thereupon the plaintiff brought ejectment for the strip of
land which the defendant included within his inclosure by
the moving of the fence.

The plaintiff relied upon adverse possession to support
his claim, and, as there was testimony upon both sides of
that question, it was proper for the court to leave it to the
jury.

In his charge, the court stated that the action was
brought to recover a strip of land two feet wide on the
easterly side of lot 6.   Counsel for the plaintiff claims
that this was not true, that his declaration stated it to be
upon lot 5, and that the effect of the charge was to preju-
dice the jury, by stating at the outset that the land was in
fact a part of defendant's lot 6, instead of plaintiff's lot 5.
Whether this strip was actually a part of the platted lot 6,
or of lot 5, is not settled by plaintiff's claim, or his dec-
laration, and we do not discover that it is determinable
from the proof.   Indeed, there is nothing to show any title
in either party to either lot, but proof of occupancy.   But
the *locus in quo* seems to have been well enough under-
stood as being a strip of land 2 feet wide by 115 feet
long, lying between the present and previous locations of
the defendant's fence.   This the jury must have under-
stood, especially as the judge followed the statement com-
plained of by saying that the only question in the case was
one of occupation or possession, and that it made no differ-
ence where the original line between lots 5 and 6 was, and
that they had nothing to do with that.   We are of the
opinion, therefore, that the plaintiff was not injured by
the statement, which may or may not have been true.
This strip of land does not become a part of lot 5 by a

mere claim in a declaration; and, on the other hand, the plaintiff's title to the *locus in quo* does not depend upon its being upon one or the other side of the original line between lots 5 and 6, as the judge told the jury.

Counsel for the plaintiff requested the court to charge that:

"If you find that the testimony of George Beecher is true,—that more than 15 years ago, after Ferris built his fence between himself and Beecher, Beecher extended his fences on the alley and street up to the Ferris fence, and after that Luther Beecher claimed to own this property down to the time of his death, and George Beecher had ince claimed to own it, as the heir of Luther Beecher,—shen your verdict must be for the plaintiff."

The court correctly refused this request, as the mere fact that Beecher built fences, and afterwards claimed ownership, is not enough to constitute adverse possession, which involves uninterrupted occupancy as well as a claim of ownership.

Complaint is made that the court refused to give the plaintiff's fifth and thirteenth requests; but we think that the former was covered by the charge, and that the latter should not have been given, for the reason that it was not incumbent upon the defendant to prove his own adverse possession. It was the plaintiff's adverse possession that was in dispute, and it was not necessary that the defendant's occupancy should have been exclusive, to defeat it.

In his charge, the court said:

"There is evidence that the taxes for the year 1880 were paid by Ferris. I charge you that that, of itself, is not necessarily controlling in the case. It is only important to help you to determine whether Ferris claimed to own that land in 1880."

It is asserted, and not denied, that there was no such evidence. We do not find it in the record, which purports to contain all of the testimony. This alleged evidence went to the jury, in connection with the defendant's claim that he was using the strip for a path. If true, it

tended to show that his user of the strip was accompanied by a claim of title, and therefore not in subordination · to, or acquiescence in, any possession or claim of title by the plaintiff. We are therefore constrained to reverse the judgment. A new trial is directed.

The other Justices concurred.