COMFORTO *v.* SKIRKE.

1. BOUNDARIES—ADVERSE POSSESSION OF DISPUTED STRIP—PERMISSIVE USE.

In suit to restrain defendants from moving or molesting a fence and shed, claimed by plaintiff to constitute the common boundary between the premises, by reason of continued adverse possession for more than 16 years, finding of trial judge that plaintiff's use of 5' x 86' strip of land in rear portion of her lot had been permissive is affirmed, under record presented.

2. SAME—HOSTILITY.

> Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession no matter how long maintained as hostility is of the very essence of adverse possession.

3. SAME—ELEMENTS.

> Adverse possession must have been for the whole period prescribed by statute, actual, open, visible, notorious, continuous and hostile.

4. SAME—PRESUMPTIONS—EVIDENCE.

> Evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner and that a party enters into possession under his deed and has possession only coextensive with his title.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted June 20, 1939. (Docket No. 90, Calendar No. 40,612.) Decided September 5, 1939. Rehearing denied November 9, 1939.

Bill by Anna Comforto against Otto T. Skirke and Regents of the University of Michigan to restrain the moving, changing or molesting of a boundary line. Bill dismissed. Plaintiff appeals. Affirmed.

*Ricca & Olds,* for plaintiff.

*G. Leslie Field,* for defendants.

BUSHNELL, J. Plaintiff, Anna Comforto, filed an amended bill of complaint on October 26, 1938, for the purpose of restraining and enjoining defendants from moving, changing or molesting a fence and shed which she claims constitutes the north boundary of her premises located on the westerly side of Concord avenue in the city of Detroit. Defendant Skirke, who is purchasing under land contract from the Regents of the University of Michigan a lot occupied by him as a coal yard located on the southerly side of Gratiot avenue, denied that the shed and fence con-

stituted the southerly boundary of his property and the northerly boundary of plaintiff's premises. He averred in his answer that the disputed strip of land, which, according to the testimony, has an average width of 5 feet and a depth of 86 feet, is a part of the premises of which he is in possession, and that its use by plaintiff and her predecessors in title has only been permissive and casual. The abutting property to the north of plaintiff's lot on its easterly 77 feet is that of Alfred C. Underwood, who testified for plaintiff. Whether or not plaintiff used or acquired title to any of the Underwood property is not an issue in this cause. At the southwest corner of the Underwood property, about 77 feet westerly from the front of plaintiff's premises, there is a jog to the north of about 5 feet to the east end of a barricade or shed fence, presumably erected for the purpose of keeping coal stored in the shed on the rear of defendants' lot from coming over onto plaintiff's property. Plaintiff's predecessor in title used this disputed strip as a small garden patch and plaintiff has used a portion of the strip for some of her side drive and the remainder for the storing of old automobile parts and refuse. At the westerly end of the strip, plaintiff has an underground gasoline tank.

The trial court was considerably impressed by the significance of the location of the garage at the rear of plaintiff's property, its north wall being erected about five feet from the barricade or fence on the northerly side of the disputed strip. The court held in the short opinion dictated on the record that plaintiff's use of the disputed strip of land was permissive only, and entered a decree dismissing the temporary injunction and plaintiff's bill of complaint.

Plaintiff claims title by adverse possession for more than 16 years and argues that the trial court's holding that the use and occupancy of the disputed

strip has been wholly permissive does not find support in the record. Although chancery cases are heard *de novo,* we are strongly of the view that, in the light of the testimony in this record, we should concur in the finding of the trial court. The use being permissive, occupancy of that sort cannot ripen into title by adverse possession.

We recently said in *Ruggles* v. *Dandison,* 284 Mich. 338:

"In *King* v. *Battle Creek Box Co.,* 235 Mich. 24, 35, the court said:

" 'Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is of the very essence of adverse possession. 1 R. C. L. pp. 701–705.

" ' "All of the authorities agree that the adverse possession must have been for the whole period prescribed by the statute, actual, open, visible, notorious, continuous and hostile." *Bean* v. *Bean,* 163 Mich. 379, 396.' "

In *Sheldon* v. *Railroad Co.,* 161 Mich. 503, the court said:

"The rule is that evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner, and that the plaintiff entered under his deed, and that his possession is only coextensive with his title, and restricted by the premises described in his deed."

See, also, *Yelverton* v. *Steele,* 40 Mich. 538; *Conner* v. *Railroad Co.,* 183 Mich. 241, and authorities therein cited.

Decree is affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.